# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Morcous MORGAN<br>Alien # A76 117 960<br>Erein IBRAHIM<br>Alien #A70 868 672,<br>        *Plaintiffs/Petitioners,*<br><br>-v.-<br><br>John ASHCROFT, U.S. Attorney General;<br>Michael GARCIA, Assistant Secretary, U.S.<br>Immigration and Customs Enforcement;<br>Bruce CHADBOURNE, Boston Field Director,<br>U.S. Immigration and Customs Enforcement;<br>Andrea J. CABRAL, Suffolk County Sheriff,<br>Suffolk County, Massachusetts<br>        *Defendants/Respondents.* | Civil Docket No:<br>04CV11017 RCL<br><br>**ORIGINAL** |

Saher Macarius, Esq.
Law Office of Saher J. Macarius
21 Walsh St.
Framingham, MA 01701
Tel. 508-879-4443
Fax. 508-879-5444
BBO #567460

## ~AMENDED~
## PETITION FOR A WRIT OF HABEAS CORPUS
## AND COMPLAINT FOR DECLARATORY RELIEF AND
## EMERGENCY STAY OF REMOVAL

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure,

1

[1]Petitioner hereby file this **amended petition** asking this honorable Court to (A) issue an **order on an emergency basis staying Petitioners' removal** from the United States, (B) **issue a writ of habeas corpus** to review Petitioner Morgan's unlawful detention by the U.S. Immigration and Customs Enforcement (ICE), and (3) **order Petitioner Morgan released** from Respondents' custody immediately.[2] Petitioners also file this action for **declaratory relief to protect their rights under both the Due Process Clause of the Fifth Amendment** to the Constitution and applicable federal law and to seek **review of the decision from the U.S. Immigration Judge and the decision of the Board of Immigration Appeals** affirming without opinion the order of the Immigration Judge and ordering Petitioners removed from the United States. If it pleases the Court, **Petitioner Ibrahim has been added to this amended petition** in that she is the wife of Petitioner Morgan and their removal cases were heard together by the Immigration Court. Thus, she is subject to the same final order of removal as Petitioner Morgan.

---

[1]Rule 15(a) of the FRCP permits amendment to a pleading as a matter of course prior to Respondents'

2

**In support of this petition, Petitioners allege as follows:**

### CUSTODY

1. Upon information and belief, Petitioner Morgan is in the custody of the U.S. ICE at Suffolk County House of Corrections located in Boston, Massachusetts. He was taken into custody on May 19, 2004.

2. Petitioner Ibrahim resides at 310 Thompson Road, #511, Webster MA 01570, with the couple's two sons, Jonathan and Jeremiah (both born in the United States).

### EXHAUSTION

3. Petitioners have exhausted their administrative remedies and their only remedy is by way of this judicial action. On July 29, 2002, the Board of Immigration Appeals affirmed without opinion the decision of the Immigration Judge denying Petitioners' applications for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. Thus, Petitioners are subject to an administratively final order of removal.[3]

---

answer to the original petition.
[2] Petitioners are husband and wife whose removal cases were consolidated before the Immigration Court.
[3] Petitioner's wife, Erein Ibrahim (A70 868 672) is also subject to a final order of removal but she is not in government custody at this time.

3

It is well settled that exhaustion is not required if it would be futile. *See, e.g., American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir 1995) Furthermore, exhaustion is not required if there would be irreparable harm. *See, e.g., Richardson v. Reno*, F. Supp., 1998 WL 74229, *3 (S.D. Fla. February 13, 1998). Finally, exhaustion is not necessary where an agency's interpretation of a statute is clearly at odds with the statute's plain meaning. Id. The Immigration and Nationality Act requires exhaustion of administrative remedies only where an alien seeks judicial review of an actual order of removal, not review of a custody decision. Accordingly, Petitioner has exhausted his administrative remedies.

## JURISDICTION

4. This action arises under the Constitution, the Immigration and Nationality Act of 1952, as amended (the INA), 8 USC §1101 *et. seq.*, and the Administrative Procedure Act (the APA), 5 USC 701 et. seq. This Court has habeas corpus jurisdiction pursuant to 28 USC §2241 *et. seq.*; St. Cyr v. INS, 121 S. Ct. 848, 69 USLW 3365 (U.S. 2001); Mattis v. Reno, 212 F.3d 31 (1st Cir. 2000); Henderson v. Reno, 157 F.3d 106 (2d Cir. 1998) *cert. den. sub. nom.* Reno v. Navas, March 8, 1999; Art. I, §9, Cl. 2 of the United States Constitution (the Suspension Clause); and the common law. This

4

Court may also exercise jurisdiction pursuant to 28 USC § 1331 and may grant relief pursuant to the Declaratory Judgment Act, 28 USC §2201 et. seq., and the All Writs Act, 28 USC §1651. This Court has mandamus jurisdiction pursuant to 28 USC §1361.

In addition to the above jurisdictional bases, Petitioners assert that this Court has jurisdiction to review the BIA's order affirming without opinion the decision of the Immigration Judge. The regulations governing Affirmances Without Opinion (AWO) limit the use of AWOs to certain circumstances. *See* 8 C.F.R. § 301(e)(4). First, before a Board member can issue an Affirmance Without Opinion (AWO) he or she must first review the merits of the case to ensure that the result reached by the IJ was correct. Next, the Board member must make sure that the case satisfies several other criteria of the regulation, 8 C.F.R. §301(e)(4)(i). Specifically, the case must satisfy the following requirements: (a) the result reached by the IJ must be correct; *and* (b) any errors in the decision below must be harmless or nonmaterial; *and either* (c) (i) the issues on appeal must be squarely controlled by existing Board or federal court precedent *and* cannot involve the application of precedent to a novel fact situation; *or* (ii) the factual and legal issues raised on appeal must be "not so substantial that the case warrants the issuance of a written opinion in the case." 8 C.F.R. §

3.1e(4)(i)(B) Because his case consists of novel facts and circumstances, this warranted a written opinion, the Petitioner's case does not satisfy the requisite criteria c(i) and c(ii) above, and therefore, the Board's use of AWO was inappropriate in this case.

In general an agency is required to explain the reasons behind a decision. SEC v. Chenery Corp., 332 U.S. 94, 196-97 (1946)(calling the requirement a "fundamental rule of administrative law"); see also Guentchev v. INS, 77 F.3d 1036, 1038 (7th Cir. 1996)(a statement of reasons for a decision is a "norm of administrative law"). Federal courts have routinely required the Board to provide an explanation for a decision that is sufficient to allow the court to carry out a review. See Panrit v. INS, 19 F.3d 544, 546 (10th Cir. 1994) quoting Turn v. INS, 997 F.2d 1306, 1310(1 0th Cir. 1993)(noting that the Board has an obligation to "articulate a reasoned basis for its decision"); Paramasamy v. Ashcroft, 295 F.3d 1047 (9th Cir. 2002)(Board must provide a "comprehensible reason for its decisions sufficient for [the court] to conduct its review and to be assured that the petitioner's case received individualized attention").

The three-sentence AWO decision does not contain any reasons or explanation as to why the decision was reached. In the Federal Register announcement of the current AWO regulation, the DOJ acknowledged that

appellants in removal proceedings have a "right to a reasoned administrative decision." Executive Office of Immigration Review; Board of Immigration Appeals: Streamlining, 64 FR 56135, 56137 (1999). The DOJ's entire justification for why the AWO procedure does not violate the requirement for a "reasons statement" is that reasons for the decision are provided in the IJ's decision.

## VENUE

5. Venue lies in the Boston District of Massachusetts, the judicial district where the Petitioners reside and where Petitioner Morgan is detained. 28 USC §2241 et. seq. and 28 USC § 1391.

## PARTIES

6. Petitioners are nationals and citizens of Egypt. Petitioner Morgan is presently detained at the Suffolk County House of Corrections in Boston, Massachusetts. Petitioner Ibrahim resides at 310 Thompson Road, #511, Webster MA 01570.

7. Respondent John Ashcroft is being sued in his official capacity as the United States Attorney General exercising authority over the Department of Justice, within which is located the Department of Homeland

7

Security of which the Bureau of Immigration and Customs Enforcement is a part.

8. Respondent Michael Garcia is being sued in his official capacity as the Assistant Secretary for the U.S. Immigration and Customs Enforcement, which has the authority to investigate, arrest, detain, and remove non-citizens in the United States.

9. Respondent Bruce Chadbourne is being sued in his official capacity as Field Director of the Boston Office of the U.S. Immigration and Custom Enforcement. As such, he is the Department of Homeland Security designate for the Boston District, empowered to carry out the deportation order against the Petitioner. The Boston District encompasses Massachusetts, within which is found the Suffolk County House of Corrections. Mr. Chadbourne has ordered the unlawful detention of the Petitioner at the Suffolk County House of Corrections in Boston, Massachusetts, which, upon information and belief, is under contract with the U.S. ICE.

10. Respondent Andrea J. Cabral is being sued in her official capacity as the Sheriff of Suffolk County wherein the Suffolk County House of Corrections is located. In this capacity, she is responsible for the physical custody of the Petitioner.

## FACTS

11. Petitioner Morgan is a native and citizen of Egypt. He entered the United States as a temporary visitor on or about September 23, 1998 and filed an application for asylum on or about February 24, 1998 with the U.S. Bureau of Citizenship and Immigration Services (BCIS) (than known as the Immigration and Naturalization Service). Petitioner Ibrahim is also a native and citizen of Egypt. She entered the United States on or about July 2, 1999 as a visitor and married Petitioner Morgan on July 12, 1999. Petitioners have two young sons born in the United States, Jonathan and Jeremiah. Prior to being taken into custody, Petitioner Morgan resided with Petitioner Ibrahim and their children in Webster, Massachusetts.

12. Petitioner Morgan sought asylum in the United States because of harm he suffered as a Coptic Christians in an overwhelmingly Muslim country. (As the spouse of an asylum applicant, Petitioner Ibrahim was listed as a derivative applicant on the asylum application.) Petitioner Morgan was an active member of the Coptic Orthodox Church. During his church service, Muslims attacked Petitioner Morgan and the Sunday School children that he was supervising. These Muslims insulted and threw rocks at the Christians as they were going into the church. The same incident happened again when

the Christians were riding the bus that took them to and from church. One of the rocks broke the glass of the bus.

13. Petitioner Morgan was also involved in the repair and expansion of the church in his community. The police and building inspector then arrested Petitioner Morgan and others for their participation in these activities. The police detained the Petitioner Morgan for twenty-four hours. He was placed in a 9'x9' room which contained 25 people. He was not given any food nor allowed to talk to anyone. The Petitioner Morgan was warned by the police officer who arrested him that if the Petitioner Morgan repeated this behavior he would be apprehended again and charged with other offenses. On January 19, 1997, a Muslim attacked the Petitioner Morgan at his church with a glass bottle. Consequently, he received stitches in his left hand.

14. In April 1998, Petitioner Morgan saw one of his Christian friends named, Mirna, with a Muslim man named, Omre. They were holding hands in a romantic way. The Petitioner Morgan recognized Omre as one of the Muslim Fundamentalists in his university. Petitioner Morgan was a Sunday School teacher whose Christian zeal led him to protect Mirna from the plots orchestrated by the Muslim Fundamentalist, Omre, to convert her. The Petitioner Morgan talked to Mirna to convince her that this relationship would hinder her practice of Christianity because they wanted to convert

her. Ultimately, Mirna decided to end her relationship with Omre. Afterwards, the Petitioner Morgan met Omre in the university. Omre stated that he knew Petitioner Morgan's role in his break-up with Mirna. Consequently, Omre, verbally and physically threatened Mr. Morgan on several occasions. Here, Petitioner Morgan received life-threatening calls at his home. These extremists attempted to convert the Petitioner Morgan to Islam. When Petitioner Morgan refused to convert, Omre threatened him by saying that he would not leave him alone.

16. In May 1998, four people carrying weapons approached Petitioner Morgan. Petitioner Morgan was knocked down, severely beat up, and had a cement block thrown at his head. The attackers told the Petitioner Morgan that they would not leave him alone on account of his Christian beliefs. After this incident, Omre called the Petitioner Morgan and asked him if he had learned his lesson. Petitioner Morgan feared to involve the police in remedying the situation. Petitioner Morgan fled to the United States to escape persecution. However, his family members were persecuted thereafter.

17. Petitioner Morgan's father was run over by a car that was driven by a Muslim Fundamentalist. The fundamentalist tried to flee the accident. When the bystanders stopped the Fundamentalist, he told the bystanders to

stop caring for the Petitioner Morgan's father because he "was an infidel Christian who had no conscience." As a result, the Petitioner Morgan's father suffered a broken hand and other bruises. These fundamentalists informed Petitioner Morgan's family that they were responsible for this incident. They further threatened Petitioner Morgan's life if he returned to Egypt.

18. On July 27, 2000, the Immigration Judge found Petitioners credible but denied his applications for asylum, withholding of removal, and protection under the U.N. Convention Against Torture. Petitioner appealed this decision to the Board of Immigration Appeals. On July 29, 2002, the BIA affirmed, without opinion, the decision of the Immigration Judge.[4]

19. On May 19, 2004, Petitioner was arrested and taken into government custody. Petitioner's arrest and detention have caused great emotional and psychological distress to Petitioner and his wife and sons.

## RIGHT TO JUDICIAL INTERVENTION

20. The basis for this Court's habeas jurisdiction to review the Petitioner's claim is contained in 28 USC §2241, the general grant of habeas jurisdiction

---

[4] Petitioners filed a Petition for Review with the First Circuit Court of Appeals but said petition was dismissed as untimely on October 16, 2002. Petitioners thereafter filed a Motion to Reopen removal proceedings which was denied by the BIA on May 2, 2003.

bestowed on the federal district courts, which neither the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), *Henderson v. INS*, 157 F.3d 106 (2d Cir. 1998) *cert. den. sub nom. Reno v. Navas*, March 8, 1999, nor the IIRAIRA eliminated or amended.

21. Petitioner Morgan is also entitled to have his detention reviewed under the common law and as a matter of constitutional right The Writ of Habeas Corpus is guaranteed by the Constitution and cannot be suspended except where "in Cases of Rebellion or Invasion the Public Safety may require it." U.S. constitution, Art. I, §9, Cl. 2(Suspension Clause).

22. In the present action, Petitioners assert that Petitioner Morgan's detention by the Respondent is in violation of the Constitution, the Immigration and Nationality Act, and the Administrative Procedures Act.

## PETITIONER IS NOT A DANGER TO THE COMMUNITY AND IS NOT A FLIGHT RISK

23. Petitioner Morgan's continued detention violates Section 241(c) of the Immigration and Nationality Act) "Detention, Release, and Removal of Aliens Ordered Removed". Petitioner Morgan has no criminal record, has strong ties to the community, has a wife and two young sons, and is not a flight risk.

13

## THE DISTRICT COURT HAS AUTHORITY TO ORDER PETITIONER MORGAN'S RELEASE.

24. This District Court can properly exercise its authority and release Petitioner Morgan pending the Court's decision in this case. Also a district court has the inherent power to release a petitioner as ancillary relief pending habeas corpus proceedings, where the court has found both a substantial claim for relief and extraordinary circumstances warranting release. See e.g. Mapp v. Reno, CV-99-4240 (CFS) slip op. at 3-4 (E.D.N.Y. Oct. 5, 1999)(citing cases).

Respondent's arguments in this vein are as follows: (1) that a district court's inherent authority to release a habeas petitioner on bail does apply in the immigration context; and (2) that the district court can exercise deferential review, even though there was no final detention decision to which to defer.

With regard to the first point, this Court should not distinguish the cases as they relate to habeas proceedings brought by prisoners in the criminal context and those in the immigration context. Federal courts have recognized that federal courts possess inherent power under the common law to release petitioners on bail pending the resolution of a habeas petition. See

Ostrer v. United States, 584 F.2d 594, 596 n.1 (2nd Cir. 1978), citing Johnston v. Marsh, 227 F.2d 528, 531 (3rd Cir. 1955) (explaining that federal courts do have inherent authority to release prisoners pending the resolution of a habeas petition, while noting former controversy over this issue). In United States ex re. Paetau v. Watkins, 164 F.2d 457, 460 (2d Cir. 1947), another habeas proceeding in the immigration context, this Court necessarily rejected the distinction between habeas authority in the criminal context, and habeas authority in the civil immigration context. Citing to court rules of habeas corpus used in the criminal context, this Court found that the district court did have the authority to release an immigrant pending the appeal of a denial of a habeas corpus petition challenging an order of deportation to Germany.

The power of district courts to set bail pending resolution of habeas corpus proceedings has been reaffirmed by federal courts in the immigration context. See e.g. United States ex rel. Potash v. District Director 169 F.2d 747, 752 (2d Cir. 1948) (upholding the district court's exercise of authority to release the immigrant pending the appeal of a denial of habeas corpus relief). See also Yanish v. Barber, 97 L.Ed. 1637, 73 Sup. Ct. 1105 (1953)(ordering release of immigrant on bail pending appeal of an order dismissing a petition for habeas corpus); United States ex rel. Beiftage v.