Shaughnessy, 212 F.2d 128 (2d Cir. 1954)(noting that the district court released immigrant on bail pending appeal); Rubinstein v. Brownell, 206 F.2d 449 (D.C. Cir. 1953)(finding under principles of habeas corpus that an immigrant was entitled to a preliminary injunction restraining the Government from revoking bail pending a proceeding to reopen an order of deportation), aff'd 346 U.S. 929 (1954); Tam v. INS, 14 F.Supp.2d 1184 (E.D.Cal. 1998).

## IMMIGRATION DETENTION MUST COMPORT WITH DUE PROCESS.

25. Immigration detention involves the deprivation of a fundamental liberty interest and must be closely scrutinized to ensure that it is narrowly tailored to serve a compelling state interest. See Reno v. Flores, 507 U.S. at 301-2 (1993) (setting forth the standard for evaluating deprivations of fundamental liberty interests and citing, inter alia, U.S. v. Salerno, 481 U.S. 739, 746 (1987)). Deferential review is appropriate only where an alien is challenging a discretionary denial of release by the Attorney General.

### IMMIGRATION DETENTION IMPLICATES AN ALIEN'S FUNDAMENTAL LIBERTY INTEREST IN BEING FREE FROM PHYSICAL INCARCERATION.

16

26. Freedom from physical restraint has always been at the core of the liberty protected by the Due Process Clause. Foucha v. Louisiana, 504 U.S. 71, 80 (1992); see also U.S. v. Salerno, 481 U.S. 739, 755 (1987). This fundamental right applies to non-citizens as well whether they are in the country legally or illegally-- and is implicated by immigration detention pending deportation or removal proceedings. See Doherty v. Thornburgh, 943 F.2d 204, 209 (2d Cir. 1991) (even undocumented aliens have substantive due process right to be free of arbitrary confinement pending deportation proceedings), cert. dismissed nom. Doherty v. Barr, 503 U.S. 901 (1992). See Addington v. Texas, 441 U.S. 418, 425 (1979)(Commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.)(emphasis added)); Foucha v. Louisiana, 504 U.S. at 80(1992)(same); Harisiades v. Shaughnessy, 342 U.S. 580, 586 & n.9 (1952) (immigrants stand on equal footing with citizens under the Constitution in several respects, including the protection of personal liberty). Cf. Salerno, 481 U.S. at 748-749 (recognizing that in determining whether it comports with due process, a statute providing for pretrial detention must be evaluated in precisely the same manner as, inter alia, the detention of potentially dangerous resident aliens pending deportation proceedings.)

## DEFERENCE IS NOT WARRANTED MERELY BECAUSE ALIENS HAVE NO ABSOLUTE RIGHT TO RELEASE FROM IMMIGRATION DETENTION.

27. In its opposition to requests to the federal district courts for release from custody, the Government often maintains that release from civil immigration custody pending removal has always been a privilege and a matter of grace, not a right or a constitutional entitlement. Petitioners state that the lack of an absolute right to release from immigration detention does not make the liberty interest that it implicates any less fundamental. A fundamental liberty interest in freedom from bodily restraint never provides an absolute entitlement to be free. Even citizens can be detained for non-punitive purposes pursuant to Congress' legitimate and reasonable regulatory goals, and under those circumstances have no absolute right to release. See Salerno, 481 U.S. at 746 (the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment) (citation omitted). Similarly, Congress may authorize detention to ensure the appearance of aliens at removal proceedings and to protect the community during the removal process. However, since a fundamental liberty interest is at stake, such detention must comport with due process. Traditional due process scrutiny requires that deprivations of fundamental liberty interests must be narrowly tailored to serve a compelling state

18

interest. See Reno v. Flores, *507* U.S. at 301-2 (1993) (citing, inter alia Salerno, 481 U.S. at 746 (1987)).

The Fifth Amendment of the Constitution provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." The argument of the Respondents that resident aliens do not have the same rights as citizens of the United States may have some value only where certain categories of rights are concerned, but certainly not where substantive, or basic human rights (**"We hold all men to be created equal..."**) are concerned. The Supreme Court recognized long ago that deportable non-citizens, even those who are unlawfully present in the United States, are protected by the Constitution. *See:* **Sin Vip Honarey Tiv. et al. v. Janet Reno**, A.G., et al., No. 99 C 0872 (Pallmeyer, J.), U.S. District Court for the Northern District of Illinois, Eastern Division, Amended Petition for Writ of Habeas Corpus (received 02/18/99).

The Associated Press reported on May 1, 1999, that the Honorable U.S. District Court Judge Mary Lisi (Providence, RI), after ordering the release of an alien who, as the Petitioner herein, had been held in detention by the I.N.S. According to the A.P., in The Providence Journal, Hon. Judge Lisi stated: "I find it incomprehensible that you can take a human being and keep them locked up for eternity", Judge Lisi told a lawyer for the INS. "I

19

cannot ascribe to that reading of the Constitution."

In <u>Hermanowski v. Farquharson</u>, et al., C.A. No. 97-220L, In the U.S. District Court for the District of Rhode Island (decided March 1, 1999) - where a petitioner had multiple convictions (a "prolific ... criminal history"), the Court made a thorough examination of the considerations of due process, the interests of society, etc. which should be weighed against a person's constitutional rights, and it also noted that "Several federal district courts have also recently decided that indefinite detention may violate a deportable alien's due process rights." (at p. 12, , *citations omitted*). In <u>Hermanowski</u>, the Court concluded: "an alien's substantive due process rights can never be violated by detention pending deportation ...". The Court determined that: "Hermanowski's continued detention violates his substantive due process right to be free from arbitrary restraint on his liberty ..."

## IRREPARABLE HARM

28. For the following reasons, this honorable court should grant a stay of the Petitioner's removal on an emergency basis:

   A.   **There is a strong likelihood that the Petitioner will prevail on the merits of the legal issues raised in his Petition for Direct Review.**
   The Petitioner's testimony regarding incidents in Egypt that precipitated his departure from the country was not contested by the

20

government. The core of the Appellant's claim was not challenged by the government or the Judge and the simple fact remains that the Appellant is a practicing Coptic Orthodox Christian who was detained in Egypt and beaten and abused solely because he was identified by the authorities as a Coptic Orthodox Christian. On those facts alone, at this juncture of the proceedings on appeal, the Appellant has shown a reasonable likelihood of success on the merits of his claim for political asylum.

Moreover, in affirming the IJ's decision denying Petitioner's application for asylum, the BIA completely disregarded an earlier decision it made in an extremely similar case. See Davila-Bardales v. INS, 27 F3d 1 (1st Cir. 1994). In Re R.-G- (BIA March 24, 1997), the BIA found that the Egyptian Coptic Christian asylum applicant had not established past persecution. However, after considering country conditions in Egypt and the plight of Coptic Christians there, the BIA found that the applicant had demonstrated a well-founded fear of future persecution: "our review leaves no doubt that to be a Coptic Christian in Egypt places such an individual at some risk because of his or her religion, and that risk can rise to the level required for establishing a well-founded fear of persecution."[5] Id.

---

[5] In R-G-, the BIA relied in part on information contained in a 1994 report prepared by the State Department entitled "Egypt-Profile of Asylum Claims and Country Conditions". These "profiles" are prepared specifically for government use and are not available to the

21

The decision in Davila-Bardales stated: "The prospect of a government agency treating virtually identical legal issues differently in different cases, without any semblance of a plausible explanation raises precisely the kinds of concerns about arbitrary agency action that the consistency doctrine addresses...we see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases, without explaining why it is doing so." Davila-Bardales, 27 F.3d at 5.

Petitioner's case involves identical country conditions and an issue of whether the Petitioner has a well-founded fear of persecution. Yet, the BIA offered no reason for distinguishing between it's conclusion in R-G- that being a Coptic Christian in Egypt places such an individual at risk, and it's opposite finding in Petitioner's case. The BIA should not be permitted to make a contrary agency decision in a virtually identical case without a reasonable explanation. See Davila-Bardales, supra.

**B.   Irreparable Harm Will Occur if the Stay is Not Granted.**

---

public. Although an updated profile would have been useful in this case, neither the government nor the IJ supplied any such profile. public. Although an updated profile profile.

22

The Petitioner claims fear of persecution if returned to Egypt. To the extent his claim is approved by this court after review, nothing could be more irreparable than sending him to a country where he will be killed upon his return. To do so would deny him the final opportunity to be heard on his very serious case. The fact that no person can be certain of their fate if forced to return to their country of origin should not preclude a finding of irreparable harm to this Petitioner.

In the event the Stay of Removal is not granted, the Petitioner will suffer irreparable harm in that he may not be alive to tell more of his situation. Were it not for the erroneous ruling of the Immigration Judge and the Board of Immigration Appeals, the Petitioner would be allowed to stay in the United States free from persecution on account of his religious and political beliefs. The Petitioner's claim should not be taken lightly and he should be allowed every opportunity to present his case in the U.S. Court system before being sent to a country where he fears for his life.

If the DHS removes the Petitioner to Egypt, his life would be in danger as he argued in his application for political asylum and he will not be allowed to return to the United States for many years. In fact, should the Petitioner be removed from the United States there can be no guarantee that he will be allowed to re-enter the United States at any time in the future nor

can there be any guarantee that he will not be killed as he legitimately fears. At least while he is in the United States he will have the opportunity to be heard on the issues in his case.

**C.   The potential harm to the Petitioner if the stay is not granted far outweighs any harm to the government.**

In this case, the only harm to any party in not granting the stay of removal is to the Petitioner. The only possible harm to the government in granting the stay is the costs associated with incarcerating the Petitioner. The Petitioner has no criminal record and is not a danger to society nor could any reasonable person argue that the Petitioner poses a risk of flight from the DHS. The Petitioner was granted voluntary departure by the Immigration Judge which shows that he is not a danger to society and could be allowed to leave the United States at his own expense.

The Petitioner's life is on the line in this case. Nothing could be more serious. Clearly the harm to the Petitioner in sending him back to Egypt where he fears persecution outweighs any harm the government would suffer if the stay is granted. Since this case must proceed through the final stage of the legal system, the only just thing to do is stay the Petitioner=s removal pending the outcome of the issues and to order the Petitioner=s

release from DHS custody during such time as it takes to resolve the issues presented by the Petitioner on appeal.

**D.     Granting the stay is in the public interest.**

There is a strong public policy in preventing the United States and other countries from sending people to places where they will be subjected to persecution or torture. In fact, such actions are the very goal of the Convention Against Torture. While the merits of the Petitioner's case are being litigated, it is in the interest of the public to allow the Petitioner every opportunity to avail himself of our legal system. Simply sending this Petitioner to a country where he fears for his life is not in anyone's interest and must be prevented. In this case, the evidence clearly shows the Petitioner's asylum claim requires further evaluation. Here, it is in all parties interests to stay the Petitioner's removal from the United States so this court can once and for all review the merits of his asylum claim. By granting a stay of the Petitioner's removal, this Court would be maintaining the status quo so important factual and legal issues can be resolved.

**WHEREFORE**, Petitioner respectfully prays this Honorable Court to:

a. Assume jurisdiction over this matter;

b. Issue an immediate Stay of Removal pending the resolution of this Petition thereby preventing the Respondents from removing the Petitioner from the United States pending further order of the Court in these proceedings;

c. Declare the Order of the Board of Immigration Appeals in error and reverse the decision by either remanding the case to the Immigration Court in Boston, Massachusetts for further proceedings on the Petitioner's eligibility for relief from removal or by granting the Petitioner's application for political asylum;

d. Award reasonable costs and attorney's fees; and

e. Grant such further relief as to the Court deems just and proper.

Dated: June 3, 2004

> Respectfully submitted,
> Mourcous Morgan and Erein
> Ibrahim, Petitioners,
> *by their attorney*
>
> _____
> Saher Macarius, Esq.
> Law Office of Saher J. Macarius
> 21 Walsh St.
> Framingham, MA 01701
> Tel. 508-879-4443
> Fax. 508-879-5444
> BBO# 567460

26

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the AMENDED Petition for Writ of Habeas Corpus were served upon the following parties/persons/agencies by US Certified mail:

John ASHCROFT
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington DC 20530-0001

Michael GARCIA
Assistant Secretary for the
U.S. Immigration and Customs Enforcement
c/o Office of the General Counsel
U.S. Department of Homeland Security
Washington DC 20258

Bruce CHADBOURNE, Boston Field Director
Bureau of Immigration and Customs Enforcement
c/o Office of the General Counsel
U.S. Department of Homeland Security
Washington DC 20258

Andrea J. CABRAL, Suffolk County Sheriff
c/o Suffolk County House of Corrections
Attn: RECORDS
20 Bradston Street
Boston MA 02118

United States Department of Justice
Executive Office for Immigration Review
Office of the Chief Clerk
Board of Immigration Appeals
5201 Leesburg Pike, Suite 1300
Falls Church VA 22041

United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston MA 02210

Signed,

*[signature]*

Saher J. Macarius, Esq.
Attorney for Petitioner
21 Walsh Street
Framingham MA 01701
508-879-4443

Date: 6/3/04